IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**FORREST BRUNSON** and
**CHANCE BRUNSON,**

    Plaintiffs,

v.     11cv1018 JCH/LAM

**CHRISTOPHER McCORKLE,** in his individual
capacity, and **DAN DEROUEN,** in his individual
capacity,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
ON THE DEFENSE OF IMMUNITY AND/OR QUALIFIED IMMUNITY,
AND ON DEFENDANTS' MOTION FOR STAY OF DISCOVERY**

THIS MATTER comes before the Court on Defendants' Motion for Judgment on the Pleadings on the Defense of Immunity And/Or Qualified Immunity, And On Defendants' Motion for Stay of Discovery (Doc. 22). The Court, having reviewed the parties' Response (Doc. 27) and Reply (Doc. 28), and the relevant law, finds that the Motion should be GRANTED in part and DENIED in part.

**FACTUAL BACKGROUND**

Plaintiff presented the following facts in the Amended Complaint (Doc. 15), and Defendants agree that the material facts are not in dispute (Doc. 22 at 4).

On May 25, 2011, a little after 10:30 p.m., Forrest Brunson was on his way home near the Taylor Ranch Subdivision in Otero County, New Mexico (¶ 5). As Forrest neared his son Chance Brunson's home, he noticed a fire in the brush on the side of the roadway (¶ 6). At the

time, there were severe drought conditions present in Otero County, New Mexico (¶ 7). Forrest immediately brought a water truck to the scene to extinguish the fire and called Chance for help. Chance replied that he would put his boots on and be right there. Within minutes, Chance met Forrest at the scene of the fire and the two started to extinguish the fire (¶ 8).

Some time later, the fire department arrived and began to mop up the hot spots that remained after the Brunsons extinguished the fire. Assistant Chief Jim Badger was in charge of the fire crew that was on scene (¶ 9). As the Brunsons were organizing the equipment from the water truck, Forrest saw that the water truck's hose was dirty and needed to be washed off. Forrest asked Assistant Chief Badger if he would wash off the hose with a fire truck's hose. Chief Badger agreed (¶ 10). After waiting a significant amount of time for the fire crew to wash off the hose, Forrest approached Chief Badger and again asked that the hose be washed off. Chief Badger replied Forrest could wait until the fire crew was done before the hose would be washed off. This caused an argument between Forrest and Chief Badger as to when the hose would be washed off.

As a result of the argument, Chief Badger contacted the county dispatch center and requested the assistance of sheriff deputies (¶ 11). At the time of Chief Badger's request for assistance, Defendants Chris McCorkle and Dan Derouen were employed as full-time, certified deputies with the Otero County Sheriff's Department. Deputies McCorkle and DeRouen were already en route to the fire scene for traffic and crowd control (¶ 12). Soon after Chief Badger's request for assistance, Deputies McCorkle and Derouen arrived at the fire scene (¶ 13). After the deputies arrived, Deputy McCorkle spoke with Chief Badger. Chief Badger explained the argument to Deputy McCorkle and explained that he did not want charges pursued against Forrest but wanted Forrest and Chance to leave the fire scene (¶ 14).

After speaking with Chief Badger, Deputy McCorkle approached Forrest to speak with him. As McCorkle neared Forrest, Forrest stated, "I'm sure you're looking for me, I'm Forrest Brunson." (¶ 15). McCorkle explained to Forrest that he needed to leave the fire scene as requested by Chief Badger. When Forrest was about to leave, McCorkle asked Forrest for his identification. Forrest refused to provide his identification. McCorkle asked again for his identification and Forrest refused. As a result of the refusals, McCorkle placed Forrest under arrest for Concealing Identity as prohibited by NMSA 1978 § 30-22-3 (¶ 16). The only reason McCorkle asked Forrest for his identification was to put Forrest's name in his report (¶ 17).

After McCorkle arrested Forrest, he directed Deputy Derouen to direct Chance to leave the fire scene and to get Chance's identification. The only reason that McCorkle wanted Chance's identification was to put Chance's name in his report (¶ 18). As Derouen approached Chance, he saw Chance was in his vehicle. Derouen informed Chance that he needed to leave and asked for Chance's identification (¶ 19). Chance refused to provide his identification. As Chance went to start the vehicle, McCorkle pulled out his Taser and activated it (¶ 20). Chance asked McCorkle if he was going to tase him and McCorkle responded that he would if Chance tried to leave. After that response, the deputies ordered Chance to exit the vehicle (¶ 21). Once Chance was out of the vehicle, he slowly reached into his pocket and removed his cell phone. After retrieving the phone, Chance tried to use his cell phone to video record Derouen and McCorkle. Once the deputies realized that Chance was going to record them, McCorkle knocked the cell phone out of Chance's hand and directed Derouen to place Chance under arrest for Concealing Identity as prohibited under NMSA 1978 § 30-22-3 (¶ 22).

**LEGAL STANDARD**

**Rule 12(c)**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard of review applicable to a Rule 12(c) motion for judgment on the pleadings is the same as that applied to a Rule 12(b)(6) motion to dismiss. *See Morris v. City of Colo. Springs*, 666 F.3d 654, 660 (10th Cir. 2012) (citing *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005)). Thus, the Court will accept Plaintiff's factual allegations as true and consider them in the light most favorable to Plaintiff. *See id. (quoting Tomlinson v. El Paso Corp.*, 653 F.3d 1281, 1285-86 (10th Cir. 2011)).

**Qualified Immunity**

The concept of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person in his or her position would have known about. *See Harlow v. Fitzgerald*, 457 U.S. 808, 818 (1982). The doctrine recognizes that officials can act without fear of harassing litigation only if they can reasonably anticipate when their conduct may give rise to liability and only if unsupported lawsuits are quickly terminated. *See Butz v. Economou*, 438 U.S. 478, 507-508 (1978). In other words, qualified immunity ensures that officers do not have to endure the burdens of litigation unless they are on notice that their conduct is unlawful. *See Saucier v. Katz*, 533 U.S. 194, 206 (2001).

Thus, in order to overcome a claim of qualified immunity, a plaintiff must (1) plead facts which, if true, would constitute a violation of a constitutional or statutory right; and (2)

demonstrate that the defendant's conduct violated clearly established rights of which a reasonable person in the defendant's position at the time would have known. *See id. at* 201-02. This initial burden is "heavy." *Hannula v. Lakewood*, 907 F.2d 129, 130 (10th Cir. 1990). If a plaintiff fails to meet either part of this burden, the defendant is entitled to qualified immunity. *See Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995). If the plaintiff meets this burden, the burden then shifts to the defendant to demonstrate "that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law." *Id*.

## ANALYSIS

**I.     Qualified Immunity Is Denied to Defendant McCorkle For Plaintiff Forrest Brunson's Claim of Fourth Amendment Violations (Count I).**

The Fourth Amendment to the United States Constitution provides, "The right of the people to be secure . . . against unreasonable searches and seizures, shall not be violated, no Warrants shall issue, but upon probable cause . . . ." Forrest Brunson alleges that Defendant McCorkle violated the Fourth Amendment when McCorkle arrested him without reasonable suspicion or probable cause. Defendant McCorkle argues that probable cause for an arrest existed, the arrest was lawful, the Fourth Amendment was not violated, and therefore the arresting officer should be granted qualified immunity. The undisputed facts and clearly established law support Plaintiff's position, thus qualified immunity will be denied.

Defendant McCorkle arrested Forrest Brunson for concealing his identity, which is a petty misdemeanor in New Mexico law. "Concealing identity consists of concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer . . . ." NMSA 1978 § 30-33-2. Unlike other criminal statutes, Fourth Amendment jurisprudence does not allow an officer to

arrest an individual solely for concealing identity. Instead, the officer must have reasonable suspicion that the individual was involved in other criminal activity. When the United States Supreme Court considered a similar concealing identity statute, it held that "to detain [an individual] and require him to identify himself violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe [the individual] was engaged or had engaged in criminal conduct." *Brown v. Texas*, 443 U.S. 47 (1979). More recently, the Tenth Circuit noted, "to arrest for concealing identity, there must be reasonable suspicion of some predicate, underlying crime." *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008). When a warrantless arrest for concealing identity is not supported by probable cause, it is a violation of the Fourth Amendment. *Id.*

Here, Defendant McCorkle admits that at the time that he arrested Forrest, McCorkle "lacked any reasonable suspicion or probable cause that Forrest had committed any criminal offense as it was clear to McCorkle that Chief Badger [the fire chief] did not want any charges pursued." (Doc. 15 at 5, ¶ 32; undisputed fact according to Doc. 22 at 4). Additionally, "[t]he only reason McCorkle asked Forrest for his identification was to put Forrest's name in his report." (Doc. 15 at 3, ¶ 17, undisputed fact). While the defense urges the Court to frame the probable cause question as whether a reasonable officer in Defendants' position would have believed that Plaintiffs had committed or were committing another crime (Doc. 22 at 7), this inquiry is not persuasive for two reasons. One, once the arresting officers concede that they did not have reasonable suspicion or probable cause to arrest, and state that they only sought identifying information for a report, they cannot convince the Court to apply an objective reasonable officer standard to determine if probable cause existed. Two, even if the Court were to apply an objective reasonable officer standard to determine if probable cause existed, the fact

that the fire chief called law enforcement to remove argumentative individuals from the scene of a fire and then told law enforcement that he did not want to press charges should not indicate to a reasonable officer that a crime was in progress to serve as the predicate crime to arrest for concealing identity. Based on the undisputed facts and the binding Tenth Circuit and United States Supreme Court law, the Court concludes that the complaint states a claim that Defendant McCorkle violated the Fourth Amendment when he arrested Forrest Brunson.

To overcome the claim of qualified immunity, a plaintiff must (1) plead facts which, if true, would constitute a violation of a constitutional or statutory right; and (2) demonstrate that the defendant's conduct violated clearly established rights of which a reasonable person in the defendant's position at the time would have known. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001). Forrest has pled a violation of a constitutional right. He has also demonstrated that Defendant McCorkle's conduct violated a clearly established right, because it was decided by the United States Supreme Court in 1979 and reiterated by the Tenth Circuit in 2008 that an officer cannot arrest for concealing identity unless there is an underlying crime. A reasonable law enforcement officer would have, or should have, known about this limitation to making an arrest. Therefore, Defendant McCorkle is not entitled to qualified immunity with regard to Forrest Brunson's Fourth Amendment claim.

    **II.**    **Qualified Immunity Is Denied to Defendants McCorkle and Derouen for Plaintiff Chance Brunson's Claim of Fourth Amendment Violations (Count II).**

Defendants McCorkle and Derouen also arrested Chance Brunson. Chance asserts that his Fourth Amendment rights were violated, and he makes the same argument as his father regarding why qualified immunity should be denied to the officers for the arrest. Additionally, Chance alleges that the officers used excessive force when they indicated that they would deploy

a Taser gun on him because he attempted to leave as directed but without first revealing his identity.  For the arrest, based on the same key facts and analysis as his father, the Court comes to the same conclusion that qualified immunity will be denied to the Defendants for Chance's arrest.  Because the use of force was threatened for an arrest that has been determined to be unlawful, qualified immunity is also denied to the officers for the brandishing the Taser.

Like the situation with his father, the officers arrested Chance for concealing his identity.  The only reason the officers wanted to know his name was for the report (Doc. 15 at 3, ¶ 18).  According to the undisputed facts, "[a]t the time that Chance was arrested by the deputies, it was clear to both deputies that there was no reasonable belief that an underlying offense had been committed or that probable cause existed to justify Derouen demanding that Chance produce his identification." (Doc. 15 at 6, ¶ 42).  Thus, Chance has pled a violation of his constitutional rights and demonstrated that it was a clearly established right.  *Saucier v. Katz,* 533 U.S. 194.  The officers are not entitled to qualified immunity for arresting Chance.

Defendant McCorkle's decision to activate and point his Taser at Chance is also evaluated by a Fourth Amendment objective reasonableness standard.  *Graham v. Connor*, 490 U.S. 386 (1989).  The Supreme Court held, the "'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them. . . ." *Id*. at 397.  In Defendants' motion for qualified immunity, Defendants have not presented any facts or circumstances that appear to make the arrest reasonable, let alone that it was reasonable to use force to effect the arrest.  The fire chief called law enforcement to ask Chance to leave the scene; law enforcement arrived and told Chance to depart; Chance got in his vehicle and attempted to comply.  Defendants have not alleged that Chance challenged their authority as law enforcement officers verbally or

8

physically. But when Chance was about to leave the fire scene, Defendant McCorkle pulled out a Taser and pointed it out Chance because he was going to leave without identifying himself. Ironically, the officers prevented Chase from leaving, which is why the fire chief had requested their help. There is not any indication that the officers attempted using words to inform Chance that he was under arrest before Defendant McCorkle pointed a Taser at him. The undisputed facts demonstrate that the officers were not presented with a circumstance where it was objectively reasonable to use force to effect an arrest, especially an unlawful arrest. Chase has demonstrated a Fourth Amendment violation of excessive force and the Court has found that a reasonable officer should have known that the show of force violated constitutional rights. As such, qualified immunity is denied to the officers for Chase's excessive force claim.

### III.     Qualified Immunity Is Granted to Defendants McCorkle and Derouen For Plaintiff Chance Brunson's Claim of First Amendment Violations (Count III).

The First Amendment to the United States Constitution states that, "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ." Chance alleges that the Defendants violated his First Amendment right when they prevented him from filming the deputies as they arrested him. Plaintiff has not brought to the Court's attention any clearly established law that an arrestee has any right to record his own arrest with a handheld device, therefore the Court will grant qualified immunity to Defendants on the First Amendment claim.

To overcome a defense of qualified immunity, a plaintiff must (1) plead facts which, if true, would constitute a violation of a constitutional or statutory right; and (2) demonstrate that the defendant's conduct violated clearly established rights of which a reasonable person in the defendant's position at the time would have known. *See Saucier v. Katz*, 533 U.S. at 201-02.

(2001). The Court need not determine (1) whether the facts pled violate a constitutional right because the Court finds (2) that Defendants conduct in this case did not violate a clearly established constitutional right.

Plaintiff relies upon a First Circuit case, *Glick v. Cuniffe*, 655 F.3d 78 (1st Cir. 2011), which reiterates that the public may video record police officers making an arrest. However, there is not any indication from Plaintiff's brief that there is any case from any jurisdiction which clearly establishes that an arrestee has a right to video record his own detention. *Glick* addresses only whether an individual may record someone else's arrest. Furthermore, in the pending case the video recording device was in the very hands that law enforcement sought to handcuff. It appears that Chance's desire to keep his hands operating his recording device would be incompatible with an arresting officer's need to take charge of a situation. Because there is not any clearly established First Amendment right to video record one's own arrest, qualified immunity will be granted to both Defendants and the count will be dismissed without prejudice.

### IV. Both Plaintiffs' State Law Tort Claims Against Both Defendants Will Be Dismissed Due to Sovereign Immunity (Count IV).

Forrest and Chance allege the Defendants committed various state law torts: assault when Defendants activated and pointed a Taser at Chance; battery when Forrest and Chance were touched during the arrest; and false arrest when they were detained without reasonable suspicion or probable cause. Generally, an individual cannot sue a sovereign entity such as the State of New Mexico, unless the sovereign has waived its immunity. Filing suit against public employees is tantamount to suing the governmental entity. NMSA 1978 41-4-2(A) ("it is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the

principles established in that act."). New Mexico has waived immunity from suit against law enforcement officers only for situations specifically addressed in the New Mexico Tort Claims Act, NMSA 1978 § 41-4-12.

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

The Amended Complaint (Doc. 27 at 14) does not mention any personal injury, bodily injury or property damage. There are not any facts from which you can infer that either Plaintiff suffered personal injury, bodily injury or property damage. Because Plaintiffs have not pled any specific injuries caused by law enforcement officers for which the state has waived immunity, the general rule of immunity stands. The state's immunity from suit requires that the state law torts asserted against the Defendants be dismissed with prejudice.

V.     The Stay of Discovery Is Lifted For The Remaining Claims.

Defendants moved for a stay of discovery pending the Court's determination of qualified immunity (Doc. 22 and Doc. 23). The discovery stay was granted on January 31, 2012 (Doc. 24). Now that the Court has resolved the qualified immunity concerns, the stay of discovery is lifted as to the claims that will proceed: Plaintiff's Fourth Amendment allegations (Counts I and II).

## CONCLUSION

Defendants' Motion for Judgment on the Pleadings on the Defense of Immunity And/Or Qualified Immunity, And On Defendants' Motion for Stay of Discovery (Doc. 22) is granted in part and denied in part. For Count I, Plaintiff Forrest Brunson's claim of Fourth Amendment

violations by Defendant McCorkle, qualified immunity for Defendant McCorkle is denied. For Count II, Plaintiff Chance Brunson's claim of Fourth Amendment violations by Defendants McCorkle and Derouen, qualified immunity for both Defendants is denied. The stay of discovery is lifted for Counts I and II and discovery may proceed. For Count III, Plaintiff Chance Brunson's claim of First Amendment violations by Defendants McCorkle and Derouen, qualified immunity is granted to both Defendants and the count is dismissed without prejudice. For Count IV, both Plaintiffs' various state law tort claims against both Defendants, the claim will be dismissed with prejudice due to sovereign immunity.

JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE