IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

FORREST BRUNSON and
CHANCE BRUNSON,

    Plaintiffs,

v.   No. Civ. 11-1018 JH/LAM

CHRISTOHPER McCORKLE, in his individual
capacity, and DAN DEROUEN, in his individual
capacity,

    Defendants.

## AMENDED MEMORANDUM OPINION AND ORDER

On February 1, 2013, Defendants Christopher McCorkle and Dan DeRouen filed a *Motion for Summary Judgment on the Defense of Immunity and/or Qualified Immunity* (Doc. 77). The Court, having reviewed the motion, briefs, evidence, relevant law, and otherwise being fully advised, concludes that the motion should be granted.

**I.   FACTUAL BACKGROUND**[1]

On May 25, 2011, Plaintiffs Forrest Brunson and Chance Brunson were both at the scene of a fire on the side of a roadway when an argument ensued between Forrest Brunson and the Fire Chief of the Otero County Fire Department, Jim Badger. *See* Def.'s Mot. (Doc. 77) at

---

[1] Defendants violated D.N.M.LR-Civ. 56.1(b) by failing to set out a concise statement of all material facts as to which they contend no genuine issue exists and by failing to number those facts. Defendants have one short paragraph of undisputed facts at the beginning of their brief, but then in their argument, they rely on additional facts and evidence not mentioned previously, requiring Plaintiffs and the Court to engage in the more labor-intensive process of combing through the entire brief to determine the facts in issue. To remedy the violation of the local rule, Plaintiffs ask the Court to strike the allegations of facts and deny the motion in its entirety. The Court will not deny the motion on that basis. Plaintiffs have sorted through the factual allegations and responded to them, and thus, the Court has before it both parties' positions on whether each fact is disputed. Moreover, the majority of the facts are undisputed. Defendants do not dispute the facts as set forth in Deputy McCorkle's Incident Report or pre-trial interview, upon which Plaintiffs rely.

¶ IV(A) and Ex. A (Dep. of Christopher McCorkle) (Doc. 77-1) at 8; Pls.' Resp. (Doc. 80) ¶ 1 (admitting facts alleged in ¶ IV(A) of Defendants' motion). Badger told Forrest Brunson he could wait until the fire crew was done before Forrest Brunson's hose would be washed off. Def.'s Mot. (Doc. 77) at ¶ IV(A); Pls.' Resp. (Doc. 80) ¶ 1. As a result of the argument, the Fire Chief placed a call for assistance to the Otero County Sheriff's Department. *Id.* Deputy McCorkle and Deputy DeRouen were already en route at 10:48 p.m. to the fire scene for traffic and crowd control. *Id.*; Pls.' Resp., Ex. A (Doc. 80-1) at 4.

Upon their arrival, Deputy McCorkle made contact with Chief Badger, who pointed to some people standing by a water truck on the east end of the scene and explained that the man wearing the cowboy hat (later identified as Forrest Brunson) had tried to take a fire hose away from his firefighters who were using the hose at the time. *See* Dep. of McCorkle (Doc. 77-1) at 8-9; Pls.' Resp., Ex. A (Doc. 80-1) at 4-5. Badger also pointed to the other individual with Forrest Brunson (later identified as Chance Brunson). *See* Pls.' Resp., Ex. A (Doc. 80-1) at 4-5. He said that the two men were interfering with the firefighters' work, and were yelling at and harassing the firefighters who had the hose. Def.'s Mot., Ex. B (Dep. of Dan DeRouen) (Doc. 77-2) at 6, 11. [2] Badger advised that he wanted the men to leave the fire scene. Defs.' Mot.

---

[2] In Deputy McCorkle's deposition, he states that Chief Badger told him that Chance Brunson had "yelled" at the fire scene. *See* Dep. of McCorkle (ECF No. 77-1) at 21. Plaintiffs dispute the fact that Badger told Defendants that Chance yelled or harassed the firefighters, arguing that McCorkle did not include in his Incident Report or pre-trial interview that Chance yelled at or "harassed" the firefighters. Although McCorkle's deposition adds more detail to his previous accounts of the incident, the deposition is not inconsistent with his prior statements. In his report, McCorkle stated that Badger informed him that Chance was making several rude comments and was mad they would not let them use the hose. Although the report does not use the term "yell," rude comments made while angry are not inconsistent with yelling. Moreover, Deputy DeRouen testified in his deposition that Badger initially told them that Plaintiffs were yelling at the firefighters and harassing them. *See* Dep. of DeRouen (ECF No. 77-2) at 6, 11. Defendants' evidence is thus sufficient to support these facts. Consequently, the Court finds that it is undisputed that Badger initially told Defendants that Chance Brunson yelled at and was harassing the firefighters at the fire scene. *Cf. LaFrenier v. Kinirey*, 550 F.3d 166, 167-68 (1st Cir. 2008) (explaining that plaintiff cannot defeat summary judgment by merely asserting that

(Doc. 77) at ¶ IV(A) and Dep. of McCorkle (Doc. 77-1) at 8; Pls.' Resp. (Doc. 80) ¶ 1 and Ex. A (Doc. 80-1) at 4.

Deputies McCorkle and DeRouen approached Forrest Brunson. *See* Dep. of McCorkle (Doc. 77-1) at 9; Pls.' Resp., Ex. A (Doc. 80-1) at 4. When Forrest first met McCorkle, Forrest voluntarily gave his name. Pls.' Resp., Ex. C (Dep. of Forrest Brunson) (Doc. 80-3) at 22. McCorkle asked what was going on. Dep. of McCorkle (Doc. 77-1) at 9; Pls.' Resp., Ex. A (Doc. 80-1) at 4. Forrest replied, "We put the fire out," and stated that they wanted to wash off their hose, but the firefighters would not let them. Pls.' Resp., Ex. A (Doc. 80-1) at 4. McCorkle told Forrest that the firefighters did not have to let them wash off their hose and that he needed to leave. *See id.* Forrest responded, "What do we get for that?" *Id.* McCorkle replied that he did a good deed and thank you, but he needed to leave. *Id.*

Deputy McCorkle then noticed the younger man, Chance, rolling up the hose and asked him who he was. *See id.* Chance responded he was with him, pointing to Forrest. *See id.* McCorkle said that they both needed to leave. *See id.* Chance asked what happened if he did not. *Id.* McCorkle informed him that he would go to jail for interfering with the firefighters. *Id.* Chance replied, "[W]ell take me to jail then." *Id.*

Deputy McCorkle then asked Forrest for his name. *See id.* Forrest asked why he needed his name. *Id.* Chance responded that you just told us to leave, and now you want our names. *Id.* McCorkle told them he needed their names for his report. *Id.* Forrest replied that he was not going to give his name. *Id.* McCorkle told him that he needed his name for his report and that he is required by law to give his name when asked. *Id.* Forrest asked what he was going to do if he did not give his name, and McCorkle explained that he would go to jail for failing to identify

---

jury could disbelieve defendant's account and concluding there was nothing inherently unbelievable about officer's testimony, despite that deposition testimony added more detail to account contained in police report, because nothing in the details was inconsistent).

3

himself. *Id.* Forrest responded that he should take him to jail then. *Id.* After giving Forrest several more chances to identify himself, he refused, so McCorkle arrested him and placed him in handcuffs. *See id.*; Dep. of Forrest Brunson (Doc. 80-3) at 22-23. McCorkle did not ask Forrest for his date of birth, driver's license number, social security number, or address. *See* Dep. of Forrest Brunson (Doc. 80-3) at 41-42.

Deputy DeRouen then advised Chance to move the water truck and come back to get the other truck. Pls.' Resp., Ex. A (Doc. 80-1) at 4. After Chance returned, DeRouen approached him and advised Chance that he needed his name. *Id.*; Dep. of DeRouen (Doc. 77-2) at 8. Chance replied to get it off the plate and he proceeded to get into the driver's seat of his truck. *See* Dep. of DeRouen (Doc. 77-2) at 8; Pls.' Resp., Ex. A (Doc. 80-1) at 4. McCorkle then came up to them. *See* Dep. of DeRouen (Doc. 77-2) at 8; Pls.' Resp., Ex. A (Doc. 80-1) at 4. DeRouen stood to the rear of the driver's door while McCorkle stood at the front of the driver's door. Pls.' Resp., Ex. A (Doc. 80-1) at 4. Deputy DeRouen then said, "[Y]ou're not going anywhere, you need to sit here and give me your name and your date of birth." *See* Dep. of DeRouen (Doc. 77-2) at 8.[3] Chance responded again that he can get it off his plate. *Id.* DeRouen replied, "No, that's not how this works, you need to give me your information." *Id.* McCorkle also told Chance that they needed his name. Pls.' Resp., Ex. A (Doc. 80-1) at 4. Chance then reached up to put the key into the ignition. *Id.* At that time, McCorkle pulled out

---

[3] Plaintiffs appear to dispute the fact that Deputy DeRouen told Chance that he was not going anywhere and that he needed to sit there. Plaintiffs rely on the version of events described in Deputy McCorkle's report and pre-trial interview, and argue that anything else testified to by Defendants in their depositions "was manufactured after this lawsuit" and should not be relied upon by the Court. As explained *supra* in fn.2, the omissions themselves do not establish an inherent conflict. Plaintiffs have chosen to rely on the omission to create a factual dispute, instead of providing direct, admissible evidence countering DeRouen's testimony, again, such as through an affidavit of Chance Brunson. The Court finds that the omissions themselves do not create an issue of fact because they do not contradict McCorkle's or DeRouen's deposition testimony, and thus, the Court will rely on DeRouen's uncontradicted, admissible deposition testimony.

his Taser and turned it on.  *Id.*; Dep. of DeRouen (Doc. 77-2) at 8.  Chance asked if he was going to tase him, and McCorkle responded that he would if he started the truck.  Pls.' Resp., Ex. A (Doc. 80-1) at 4; Dep. of DeRouen (Doc. 77-2) at 8-9.  Chance then got out of the vehicle, and DeRouen arrested him and placed him in handcuffs.  Pls.' Resp., Ex. A (Doc. 80-1) at 4-5; Dep. of DeRouen (Doc. 77-2) at 8.  McCorkle believed that Chance was not free to leave "[b]ecause we needed his name for the report, just like he had already seen with his father."  Pls.' Resp., Ex. B (Doc. 80-2) at 11.

Deputy McCorkle then approached Chief Badger, who was standing with Michael Bake, a witness on the scene.  *See* Pls.' Resp., Ex. A (Doc. 80-1) at 5.  Bake said he saw Forrest try to take a fire hose from two firefighters, Cody Imhoff and Ruben Garza.  *Id.*  He stated that, although Forrest was unable to get the hose from the two of them, he did try to get it.  *Id.*  Badger said that Chance was making several rude comments, was mad that the firefighters on the scene would not let the Brunsons use the hose, and was yelling.  *Id.*; Dep. of McCorkle (Doc. 77-1) at 21.  Defendant McCorkle asked Badger whether he wanted to pursue charges for interference with the firefighters.  *See* Pls.' Resp., Ex. A (Doc. 80-1) at 5 and Ex. B (Doc. 80-2) at 3-4.  Badger responded, no, that he just wanted them to get out of the way and leave.  *Id.*

After Defendants arrested Plaintiffs, they charged them with "Concealing Identity" in violation of N.M. Stat. Ann. § 30-22-3.  *See* Def.'s Mot. (Doc. 77) at ¶ IV(A); Pls.' Resp. (Doc. 80) ¶ 1 and Ex. A (Doc. 80-1) at 1.

Subsequently, in an August 2011 pre-trial interview with Plaintiffs' counsel, counsel asked Deputy McCorkle whether asking for the Brunsons' names and dates of birth was for his report.  *See* Pls.' Resp., Ex. B (Doc. 80-2) at 5.  McCorkle replied, "Yes, that was for my report." *Id.*  When asked if there was any other reason, McCorkle stated, "No, just documenting my report in case my bosses later ask me, because they always ask you, 'Who did you talk to on the

scene? Who were the people out there that were causing a commotion?' We have [to] identify all parties, just like I already knew Chief Badger, so that's why I didn't ask him for his name." *Id.* at 5-6. Later in the interview, counsel asked McCorkle, "And other than needing Chance's name for your police report, did you need it for any other purpose?" *Id.* at 12. McCorkle responded, "No, just for the police report." *Id.*

## II.   PROCEDURAL HISTORY

On October 5, 2011, Plaintiffs filed suit against Defendants in state court. Notice of Removal, Ex. B (Compl.) (Doc. 1-2) at 2 of 10. After the case was removed to this Court, Plaintiffs filed a First Amended Complaint, asserting the following claims: (1) unlawful seizure and arrest of Forrest Brunson against Defendant McCorkle in violation of the Fourth Amendment (Count I); (2) unlawful seizure and arrest of Chance Brunson against Defendants McCorkle and DeRouen in violation of the Fourth Amendment (Count II); (3) the use of excessive force against Chance Brunson by Defendants McCorkle and DeRouen in violation of the Fourth Amendment (Count II); (4) violation of Chance Brunson's First Amendment rights against Defendants McCorkle and DeRouen (Count III); and (5) assault, battery, and false arrest (Count IV). Pls.' First Am. Compl. (Doc. 15) at 5-9.

On September 18, 2012, this Court entered a Memorandum Opinion and Order Granting in Part and Denying in Part Defendants' Motion for Judgment on the Pleadings on the Defense of Immunity and/or Qualified Immunity, and on Defendants' Motion for Stay of Discovery (Doc. 39). The Court dismissed Plaintiff Chance Brunson's First Amendment claim against both Defendants (Count III) based on qualified immunity. Mem. Op. and Order (Doc. 39) at 12. The Court also dismissed Plaintiffs' various state law tort claims against both Defendants on the grounds of sovereign immunity. *Id.* The Court denied Defendants' requests to dismiss Plaintiffs' Fourth Amendment unlawful arrest and excessive force claims. *Id.* at 11-12.

6

Defendants have now moved for summary judgment based on qualified immunity on the remaining Fourth Amendment claims.

## III. LEGAL STANDARD

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity operates to protect officers from the sometimes hazy border between excessive and acceptable force and to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful. *Saucier v. Katz*, 533 U.S. 194, 206 (2001). When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test. *See Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000). The plaintiff must demonstrate that (1) the defendant violated a constitutional or statutory right and (2) the right was clearly established at the time of the conduct. *Id.* As to the first inquiry, the question is whether the facts alleged, which are taken in the light most favorable to the party asserting the injury, the officer's conduct violated a constitutional right. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). The second inquiry is more specific than whether the officer's conduct violated a constitutional right; the question is whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances he confronted. *Saucier*, 533 U.S. at 202. "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the

plaintiff maintains." *Klen v. City of Loveland, Colo.*, 661 F.3d 498, 511 (10th Cir. 2011).

If the plaintiff establishes both elements of the qualified immunity test, then the burden shifts back to the defendant to show there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Nelson*, 207 F.3d at 1206. Summary judgment is appropriate only if "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* (internal quotations omitted).

## IV.  ANALYSIS

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . ." U.S. Const., amend. IV.

### A.  Unlawful Arrest

The warrantless arrest of a person in a public place based on probable cause does not violate the Fourth Amendment. *United States v. Santana*, 427 U.S. 38, 42 (1976) (citing *United States v. Watson*, 423 U.S. 411 (1976)). Probable cause to support a warrantless arrest exists when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent man to believe that the suspect has committed or was committing an offense. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). "[I]n determining whether probable cause exists, the courts must apply the 'totality of circumstances' test." *Brierley v. Schoenfeld,* 781 F.2d 838, 841 n.1 (10th Cir. 1986) (citing *Illinois v. Gates*, 462 U.S. 213 (1983)). In the qualified immunity context, a defendant is entitled to immunity if a reasonable officer could have believed that

8

probable cause existed to arrest the plaintiff. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). Law enforcement officers who reasonably but mistakenly conclude that probable cause is present are also entitled to qualified immunity. *Id.* at 227.

The probable cause standard is "an objective standard, and thus, '[t]he subjective belief of an individual officer as to whether there was probable cause for making an arrest is not dispositive.'" *Koch v. City of Del City*, 660 F.3d 1228, 1239 (10th Cir. 2011) (quoting *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004)). *See also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."). "That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck*, 543 U.S. at 153.

In *Devenpeck*, the Supreme Court rejected the rule that the offense establishing probable cause must be closely related to, and based on the same conduct as, the offense identified by the arresting officer at the time of the arrest. *See id.* In so holding, the Supreme Court explained:

> [T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. [T]he Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent. [E]venhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer.

*Id.* (internal citations and quotations omitted, emphasis in original). The Supreme Court thus concluded that the subjective intent of the arresting officer is not a basis for invalidating an arrest. *Id.* at 154-55. "Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest." *Id.* at 155. Consequently, "[a]ll that matters is whether [the officer] possessed knowledge of evidence that would provide probable cause to arrest her on

9

*some* ground." *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006) (emphasis in original).

Defendants here charged Plaintiffs with concealing identity. "Concealing identity consists of concealing one's true name or identity, or disguising oneself with intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer . . . ." N.M. Stat. Ann. § 30-22-3. "Section 30–22–3 requires a person to furnish identifying information immediately upon request or, if the person has reasonable concerns about the validity of the request, so soon thereafter as not to cause any 'substantial inconvenience or expense to the police.'" *State v. Dawson*, 1999-NMCA-072, ¶ 12, 127 N.M. 472, 983 P.2d 421 (quoting *In re Suazo*, 117 N.M. 785, 793, 877 P.2d 1088, 1096 (1994)).

Unlike other criminal statutes, Fourth Amendment jurisprudence does not allow an officer to arrest an individual solely for concealing identity; instead, the officer must have "reasonable suspicion" that the individual was involved in "some predicate, underlying crime." *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008). When the United States Supreme Court considered a similar concealing identity statute, it held that "to detain [an individual] and require him to identify himself violated the Fourth Amendment because the officers lacked any reasonable suspicion to believe [the individual] was engaged or had engaged in criminal conduct." *Brown v. Texas*, 443 U.S. 47, 53 (1979).

"For reasonable suspicion to exist, an officer 'need not rule out the possibility of innocent conduct;' he or she simply must possess 'some minimal level of objective justification' for making the stop." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (quoting *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004)). "Evidence falling 'considerably short' of a preponderance satisfies this standard." *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). A court considers the totality of the circumstances and the

10

information available to the officer when determining whether reasonable suspicion existed to support a detention. *See id.*

Defendants contend that they had reasonable suspicion and probable cause to believe that Plaintiffs had committed one or more of the following crimes: (i) interference with a firefighter in violation of N.M. Stat. Ann. § 30-7-22(A)(2); (ii) interference with a public official in violation of N.M. Stat. Ann. § 30-20-13(B); (iii) assault in violation of N.M. Stat. Ann. § 30-3-1(A) or (B); and (iv) battery in violation of N.M. Stat. Ann. § 30-3-4. Accordingly, Defendants argue that they could lawfully require Plaintiffs to identify themselves, and when Plaintiffs refused, to arrest them for concealing their identities as well as for the additional four crimes listed, but not charged. The Court will consider Defendants' arguments as to each Plaintiff.

        **1.     Forrest Brunson**

Under New Mexico law, it is a misdemeanor to interfere with fire control. *See* N.M. Stat. Ann. § 30-7-22(A)-(B). Among other things, the statute defines interference with fire control as "intentionally interfering with the lawful efforts of a fireman . . . to control or extinguish a fire." *Id.* § 30-7-22(A)(2). The statute does not define the term "interfere," but the ordinary meaning is "to come into opposition, as one thing with another, especially with the effect of hampering action or procedure." Dictionary.com, http://dictionary.reference.com/browse/interfere?s=t.

The undisputed facts establish that Deputy McCorkle had probable cause to believe that Forrest Brunson had committed the crime of interfering with fire control. Although McCorkle did not use the term "interfered with" in his report, the description contained in the report of what Chief Badger said Forrest had done satisfies the elements of the statute. Badger told McCorkle that Forrest tried to take a hose away from his firefighters who were using the hose at the time. Bake confirmed this account, saying he saw Forrest try to take the hose away from Imhoff and Garza. Taking a hose away from a firefighter who is using it would have the effect

11

of hampering their firefighting efforts. Based on these facts, McCorkle had probable cause to believe that Forrest intentionally interfered with the efforts of the firefighters to control the fire.

The fact that Defendants did not charge Forrest Brunson with the crime of interference with fire control does not affect the analysis. As the Supreme Court has held, the subjective intent of the arresting officer is not a basis for invalidating an arrest, so long as the officer had knowledge of evidence that would provide probable cause to arrest the suspect on some ground. *See Devenpeck*, 543 U.S. at 154-55. Although Deputy McCorkle did not charge Forrest Brunson with the additional crime of interference with fire control, the objective evidence that he knew at the time provided probable cause to arrest Forrest for that crime. Thus, McCorkle's failure to actually charge Brunson with the additional crime does not invalidate his arrest.[4] McCorkle is thus entitled to qualified immunity and summary judgment on Forrest Brunson's unlawful arrest claim.[5]

---

[4] Notably, although Deputy McCorkle did not choose to charge Forrest Brunson with the crime of interference with fire control, the undisputed evidence shows that he considered charging Plaintiffs with that offense at the time of the incident. McCorkle noted in his Incident Report that he told Chance Brunson that if he did not leave the scene, he would go to jail for interfering with the firefighters. McCorkle also asked Chief Badger if he wanted to pursue anything on the crime of interference, but Badger responded, "No."

[5] The Court recognizes that the facts giving rise to the interference with fire control charge did not occur in Defendants' presence. The Supreme Court has not decided whether the Fourth Amendment permits a warrantless arrest for a misdemeanor when the alleged offense did not occur in the presence of the arresting officer. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 340 n. 11 (2001). A number of circuit courts, however, have held that the warrantless arrest of a suspect for a misdemeanor not committed in the presence of arresting officers does not violate the Fourth Amendment, so long as the officers had probable cause to support the arrest. *See Woods v. City of Chicago*, 234 F.3d 979, 992-95 (7th Cir. 2000); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Fields v. City of South Houston*, 922 F.2d 1183, 1189 (5th Cir. 1991); *Barry v. Fowler*, 902 F.2d 770, 772 (9th Cir.1990); *Street v. Surdyka*, 492 F.2d 368, 372 (4th Cir. 1974). It does not appear, based on the Court's research, that the Tenth Circuit has directly addressed the issue. Given the unsettled nature of this law, for purposes of qualified immunity, an officer making an arrest for a misdemeanor offense, whether or not in the officer's presence, cannot be liable for violating clearly established rights under the Fourth Amendment as long as the officer had probable cause that the suspect committed an offense. *See Baribeau v. City of Minneapolis*, 596 F.3d 465, 488 (8th Cir. 2010) (J. Colloton, concurring in part and dissenting in part).

Additionally, Deputy McCorkle had probable cause to arrest Forrest Brunson for the charged crime of concealing identity. As set forth above, an officer is entitled to qualified immunity if the facts within his knowledge would have led a reasonable officer to conclude Plaintiff concealed his identity in violation of N.M. Stat. Ann. § 30-22-3. *Albright v. Rodriguez*, 51 F.3d 1531, 1536 (10th Cir. 1995). "In order to carry his burden at summary judgment, therefore, Plaintiff had to establish that a reasonable officer would not have believed based on the facts and circumstances known to Defendant that he had probable cause to arrest Plaintiff for concealing identity." *Id.*

Although the facts as construed in Plaintiffs' favor show that Forrest Brunson initially volunteered his name to Deputy McCorkle when they first met, Forrest Brunson does not dispute that later in the conversation, when McCorkle asked for his name, he refused to provide it. It is undisputed that McCorkle wanted Forrest Brunson's name to put in his report, and had told him so, yet Forrest continued to refuse to reveal his name, even after McCorkle informed him that the consequence of failing to do so would be arrest. Instead of complying, Forrest said to take him to jail. There is thus evidence to support McCorkle's belief that Forrest Brunson refused to reveal his name in order to hinder or interrupt McCorkle in the legal performance of his duty, namely, preparing his official report of the incident. *Cf. Albright*, 51 F.3d at 1537 (holding officer reasonably could have concluded he had probable cause to arrest plaintiff for concealing identity where plaintiff "(1) refused to identify himself to [d]efendant; (2) told [d]efendant to 'radio in a tort claim' in response to [d]efendant's investigative efforts; (3) after being informed he could be arrested, persisted in his refusal to identify himself; and (4) held out his hands to be handcuffed and replied 'go ahead.'").

The fact that Forrest Brunson volunteered his name initially does not negate probable cause, as there are several reasons an officer may have to ask for a suspect's name more than

13

once. An officer, for example, may not have heard the name the first time or may have forgotten the name, and thus, would have a need to ask the suspect again for his name. "The purpose of Section 30-22-3 is 'to provide police officers the minimal, essential information regarding identity so that they can perform their duties (not be 'hindered' in the 'legal performance of [their duties]').'" *Dawson*, 1999-NMCA-072, ¶ 12 (quoting *State v. Andrews*, 1997-NMCA-017, ¶ 6, 123 N.M. 95, 934 P.2d 289). A suspect's failure to cooperate and provide his name again, when asked by the officer so that he could prepare his report, would indicate to a reasonable officer in such circumstances that the suspect has violated the concealing identity statute because the suspect's failure to fully disclose his own identity hindered the officer in his duties and caused substantial inconvenience to the officer. *Cf. Dawson*, 1999-NMCA-072, ¶¶ 2-4, 14 (holding that defendant was properly convicted of concealing identity where the defendant "refused to provide any identification to Officer Fox, refused to answer several requests for identification by Sergeant Fowler before giving his last name, and provided his full name to Corporal Flint only after an initial refusal," because "[d]efendant's delay in identifying himself caused substantial inconvenience to the UNM officers"). Plaintiff Forrest Brunson has not met his burden to show that a reasonable officer would not have believed based on the facts known to McCorkle that he had probable cause to arrest Plaintiff for concealing identity.

Accordingly, the Court finds that the facts, when construed in Plaintiffs' favor, demonstrate that McCorkle had probable cause to arrest Forrest Brunson for the crimes of interference with fire control and concealing identity.[6] Defendants are thus entitled to summary judgment on Forrest Brunson's Fourth Amendment unlawful arrest claim.

    **2.**    **Chance Brunson**

---

[6] Because there was probable cause to support Forrest Brunson's arrest for the underlying crime of interference with fire control and for the charged crime of concealing identity, the Court need not look to the other crimes cited by Defendants to support the arrest -- interference with a public official, assault, and battery.

The undisputed evidence shows that Chief Badger called for police assistance to help with unruly persons at the scene of a fire, and that when Defendants arrived, Badger told them that Plaintiffs were interfering with the firefighters' work in an attempt to get their hose washed off, and were harassing the firefighters who had the hose. This information provided Defendants with a reasonable, objective justification for believing that Chance Brunson may have committed the crime of interference with fire control. As the Tenth Circuit has noted, the reasonable suspicion standard requires only a "minimal level of objective justification" for detention that does not amount to probable cause, or even preponderance of the evidence. *See Winder*, 557 F.3d at 1134. Because Defendants had objective, particularized suspicion of criminal activity, they had reasonable suspicion to investigate further and ask Chance Brunson for his name.

It is further undisputed that Chance Brunson was present during the confrontation and arrest of his father, and knew that Deputy McCorkle wanted his and his father's names for his report. Chance's refusal to provide his name, when repeatedly asked for it by Defendants, provided Defendants with probable cause that he intended to hinder Defendants in the performance of their duties, particularly the preparation of a report regarding the incident. *See* cases cited *supra* at 14-15. Because Defendants had probable cause to arrest Chance Brunson for concealing identity, his arrest was lawful. Defendants are therefore entitled to summary judgment and qualified immunity on Chance Brunson's unlawful arrest claim.

### B.     Excessive Force

Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395-97 (1989). The reasonableness of the officer's belief as to the appropriate level of force should be judged from the perspective of an officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* at 396. Among the factors that courts should consider in determining whether a police officer applied excessive

force are (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.  *Id.*

Inherent in an officer's authority to make an arrest or detention is the authority to use reasonable force to effectuate the arrest or detention.  *See Muehler v. Mena*, 544 U.S. 93, 98-99 (2005).  As the Tenth Circuit explained:

> [T]he excessive force inquiry evaluates the force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case. Thus, in a case where police effect an arrest without probable cause or a detention without reasonable suspicion, but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force.

*Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007).  Police may use more force in making an arrest than in effecting an investigative detention.  *Id.*

As explained previously, Defendants had probable cause to arrest Chance Brunson for concealing identity at the time Deputy McCorkle displayed his Taser and told him to get out of the truck.  Defendants could thus use the amount of force reasonably necessary to effect an arrest.  The record also shows that Defendants informed Chance that he was not free to leave in the truck and was being detained.  The undisputed evidence is that Deputy DeRouen told Chance, after he got into his truck, that Chance could not go anywhere and that he needed to sit there and give him his name and date of birth.  When Chance Brunson again refused to comply and began to put his keys in the ignition, McCorkle displayed his Taser and threatened to use it.

Turning to the second prong of the qualified immunity analysis, the Court concludes that it was not clearly established at the time that Deputy McCorkle could not display a Taser in order to effect the arrest of a suspect whom he had probable cause to arrest, and who was showing an unwillingness to comply with the deputies' commands to remain on the scene.  Indeed, Plaintiffs

have not cited any cases showing that it was clearly established that McCorkle's actions were unreasonable. Although the crime at issue here, concealing identity, was a petty misdemeanor, Chance Brunson showed an unwillingness to comply with Defendants' requests for his name, and further, showed that he intended to drive away despite Deputy DeRouen's command to not go anywhere. A reasonable officer had cause to believe that Chance was attempting to evade arrest by flight. Significantly, the force used to detain Chance – displaying the Taser and threatening its use – did not cause any physical bodily harm to him. Thus, the totality of the circumstances demonstrates that it would not have been clear to a reasonable officer that the amount of force used by Defendant McCorkle to arrest Chance Brunson was unlawful. *Cf. Cockrell v. City of Cincinnati*, 468 Fed. Appx. 491, 497-98 (6th Cir. Feb. 23, 2012) (unpublished decision) (not clearly established at time of 2008 incident, nor at the time of the circuit's opinion, that *tasing* a suspect who fled from the scene of a nonviolent misdemeanor constituted excessive force); *Mecham v. Frazier*, 500 F.3d 1200, 1204-05 (10th Cir. 2007) (officers' *use* of pepper spray during traffic stop to force motorist from her vehicle was objectively reasonable where motorist argued with officers during encounter, ignored officer's repeated warnings to get out of car under penalty of arrest, and remained in driver's seat with keys to car); *Pollarine v. Boyer*, 232 Fed. Appx. 106, 109-11 (3d Cir. Apr. 18, 2007) (unpublished decision) (affirming grant of summary judgment in favor of defendants where district court concluded that threat to use pepper spray on person actively resisting arrest does not constitute excessive force); *Richter v. City of Renton*, No. C11-1399-JCC, 2012 WL 5194088, *8 (W.D. Wash. Oct. 19, 2012) (unpublished opinion) (officer used minimal, reasonable force to restrain suspect by holding her arms and threatening to tase her, even though the crime for which she was being arrested was minor, as evidence showed that suspect attempted to pull away from officers).

Accordingly, the Court will therefore grant summary judgment to Deputy McCorkle on Chance Brunson's excessive force claim.

### C. Attorneys' Fees and Costs

Defendants make a cursory request in their motion for summary judgment for attorneys' fees and costs. The United States Supreme Court has held that 42 U.S.C. § 1988 authorizes an attorneys' fees award to a prevailing defendant, but only upon a finding that "the plaintiff's action was frivolous, unreasonable, or without foundation." *Fox v. Vice*, 131 S.Ct. 2205, 2213 (2011) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)). Defendants have made no argument to support their attorneys' fees request. Moreover, the record does not support a finding that attorneys' fees are warranted in this case. The Court will therefore deny Defendants' request for attorneys' fees.

A prevailing party is nonetheless entitled to costs other than attorneys' fees under Federal Rule of Civil Procedure 54(d)(1). The Court, however, will deny the motion to assess costs without prejudice, as Defendants have not adhered to the District of New Mexico Local Rule 54.1, which provides that a motion to tax costs must be filed and served within 30 days of entry of judgment and include an itemized cost bill and an affidavit. *See* D.N.M.LR-Civ. 54.1. The Court will entertain a motion for costs when that issue is properly before it.

### V. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' *Motion for Summary Judgment on the Defense of Immunity and/or Qualified Immunity* (**Doc. 77**) is **GRANTED**, and Plaintiffs' remaining claims are **DISMISSED WITH PREJUDICE**.

_____
UNITED STATES DISTRICT JUDGE